# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| vs. | ) | Case No. 4:18-mj-180-TMP |
| | ) | 4:18-CR-295-RDP-SGC |
| OSCAR JESUS GOMEZ-ZAPATA, | ) | |
| | ) | |
| Defendant. | ) | |

## CORRECTED MEMORANDUM OPINION and ORDER

At the beginning, the court believed this was an opportunity to chime in on the continuing debate over the setting of conditions of release under the Bail Reform Act, 18 U.S.C. § 3141 *et seq.*, for a defendant against who an ICE detainer has been lodged when the defendant is charged with illegal reentry under 8 U.S.C. § 1326. Courts take two basic approaches. Some courts, including this one, have reasoned that a fundamental and essential purpose of conditions of release under the Act is to reasonably assure the "appearance" of the defendant to answer the criminal charge, and that, if releasing a defendant on conditions has the inevitable effect of *causing* the defendant's non-appearance due to his deportation, there are no conditions available under the Act that can be set and detention is required. See, e.g., *United States v. Ramirez-Hernandez*, 910 F. Supp. 3d 1155 (N.D. Iowa 2012); *United States v. Lozano,* No. 1:09-cr-158-WKW, 2009 WL 30522979

(M.D. Ala.) aff'd on supplemental grounds by district judge, 2009 WL 38349081 (M.D.Ala. Nov. 16, 2009); *United States v. Castro-Inzunza*, No. 3:11-cr-418-MA, 2012 WL 1952652 (D.Or. May 30, 2012). Other courts have held that the "risk of non-appearance" must involve some intentional or volitional act by the defendant and that a defendant's involuntary deportation from the United States is not the defendant's fault and should not be considered as a basis for denying him release under the Bail Reform Act. See, e.g., *United States v. Barrera-Omana*, 638 F. Supp. 2d 1108 (D. Minn. 2009); *United States v. Trujillo-Alvarez*, 900 F. Supp. 2d 1167 (D. Or. 2012); *United States v. Lizardi-Maldonado*, 275 F. Supp. 3d 1284, 1299 (D. Utah 2017). The court originally thought this case was an opportunity to re-examine its own views and those of other courts on these issues, but as explained below, it is not an appropriate case.

The defendant, Mr. Gomez-Zapata, is a citizen of Mexico who is the subject of a final order of removal under which he was previously removed from the United States in 2007. On May 21, 2018, he again came to the attention of Immigration and Customs Enforcement ("ICE") officers when he was arrested by the Dekalb County Sheriffs' Department for possession of a prohibited beverage.[1] After confirming his identity from fingerprints, the defendant was turned over to ICE, where he remained for about a month before the government charged him in a

---

[1] Dekalb County, Alabama, is a "dry" county, in which possession of alcoholic beverages is illegal.

complaint with illegally reentering the country without permission, in violation of 8 U.S.C § 1326.

The defendant made his initial appearance on June 21, 2018, at which the government moved for Mr. Gomez-Zapata's detention under the Bail Reform Act. The defendant was brought to court and delivered to the Marshals Service by ICE agents the morning of his initial appearance. Despite surrendering custody of the defendant to the Marshals Service, ICE now has lodged a detainer for his return. The court conducted a preliminary hearing and detention hearing under 18 U.S.C. § 3142 on June 25, 2018. At the conclusion of the hearing, and without opposition, the government requested until June 29, 2018, to file additional authorities in support of the defendant's detention, which the court granted. Both the government and the defendant filed additional briefs, which have been considered by the court. (Docs. 7, 8).

According to the pretrial services report tendered by both parties, Mr. Gomez-Zapata attended primary school in Mexico, where his parents still reside today. He has five siblings living the United States, and he has been living with his sister in Albertville, Alabama. Prior to his arrest, he had worked for two months at a manufacturing plant building wooden pallets. There is no indication that Mr. Gomez-Zapata has a wife or children in either Mexico or the United States. His only criminal conviction is for a misdemeanor driving under the

influence, which occurred in 2006.

Notwithstanding the diverging lines of cases mentioned above, this is not an appropriate case for the court to explore the tension between the Bail Reform Act and the Immigration and Nationality Act. A resolution of that tension is necessary only if it would make a difference in whether Mr. Gomez-Zapata would be entitled to the setting of conditions of release as opposed to detention under the Bail Reform Act. Stated another way, the court is required to address the tension between the Bail Reform Act and the Immigration and Naturalization Act only if, disregarding the ICE detainer against him, the defendant would be entitled to release under the terms of the Bail Reform Act. At the end of the day, even discounting the ICE detainer and likelihood of removal, the defendant is not a proper candidate for release on bond.

At the outset, the offense charged against Mr. Gomez-Zapata carries no presumption of detention. See *United States v. Ramirez-Hernandez*, 910 F. Supp. 3d 1155, 1157 (N.D. Iowa 2012). This means that the court must look to the factors enumerated at 18 U.S.C. § 3142(g) to make the predictive assessment of the defendant's risk of non-appearance or danger. The Bail Reform Act requires an assessment of whether he should be detained pursuant to a balancing of the factors delineated in § 3142(g). That provision states:

**(g) Factors to be considered**. The judicial officer shall, in

determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

> (2) the weight of the evidence against the person;

> (3) the history and characteristics of the person, including

>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

Applying these factors to the evidence and proffers in this case, the court finds that the defendant is due to be detained.

Although the charge against the defendant did not involve a firearm or controlled substances, the weight of the evidence against him is very heavy. There is clear evidence of his previous removal from the United States and the fact of his presence here in the United States once again, making the likelihood of conviction almost overwhelming. His only family ties are the presence of his siblings and the fact that he lives with one of his sisters, but this is offset by parents living in Mexico. There is no evidence of whether any of the defendant's siblings are legally in the United States, although it is noted that none of them was proposed as a third-party custodian or appeared at any of the defendant's hearings. His only criminal conviction was a misdemeanor twelve years ago. His work ties to the district are very short-lived, only the last two months before his arrest. Moreover, because of his apparent illegal status, he cannot be legally employed while released on bond. Also, he has demonstrated a willingness and skill for crossing the border undetected, giving him a chance to leave rather than face prosecution.

Given the likelihood of conviction and a custodial sentence, and the relatively scant incentives for someone in the defendant's posture to remain in the

country, the temptation for such a defendant to flee to Mexico is great.[2]  Absent a reliable third-party custodian, there are no conditions of release that can reasonably assure his appearance in connection with the charge.  In these circumstances, whether the ICE detainer, which certainly remains another factor to consider, alone makes the defendant "unbondable" is unimportant, and the court need not wrestle with the difficult questions involved in the tension between the Bail Reform Act and the Immigration and Naturalization Act.  This is not a case similar to those in which an illegal-reentry defendant has been granted conditions of release; this is not a defendant with extensive and long-term family and employment ties to the community creating incentives for him to remain in the community.  He appears not to have a spouse or citizen children, and it is unclear whether his siblings are legally in the country.  He does not appear to have significant employment or property ties.  In short, he has little reason to remain in the United States if he has the opportunity to return to Mexico.

Regardless, therefore, of which of these two lines of cases correctly assesses the interplay between the Bail Reform Act and the Immigration and Naturalization Act,[3] the government's motion for detention is due to be and hereby is GRANTED.  It is ORDERED that the defendant be committed to the custody of

---

[2]      The government does not argue the defendant is a danger to anyone or the community.

[3]      It is apparent that, someday, an appropriate case and defendant will come before the court making the resolution of this statutory tension unavoidable as long as ICE continues to surrender its deportation custody to the court for prosecution purposes.

the Attorney General and confined to a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences; that he be afforded reasonable opportunity for private consultation of counsel, and that, upon order of this Court or upon a request by an attorney for the Government, the person in charge of the corrections facility in which the defendants are confined shall deliver the defendant to the United States Marshal for the purpose of appearances in this case.

DONE this 3rd day of July, 2018.


_____
T. MICHAEL PUTNAM
UNITED STATES MAGISTRATE JUDGE